UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

BENDER SHIPBUILDING & REPAIR CO.,
INC.                                                          Case No. 09-12616-MAM

      Debtor

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY; FIREMAN'S
FUND INSURANCE COMPANY; THE
NORTHERN ASSURANCE COMPANY OF
AMERICA; GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK; INDEMNITY
INSURANCE COMPANY OF NORTH
AMERICA; and AMERICAN HOME
ASSURANCE COMPANY

      Plaintiffs

vs.                                                           Adv. No. 09-01077

SEACOR MARINE LLC, and BENDER
SHIPBUILDING & REPAIR CO., INC.

      Defendants

### ORDER GRANTING IN PART AND DENYING IN PART SEACOR'S MOTION TO DISMISS AND DENYING BENDER'S MOTION TO DISMISS CROSS CLAIMS

This adversary case is before the Court on the motion of Seacor Marine LLC to dismiss

Bender Shipbuilding & Repair Co., Inc.'s cross-claims against Seacor. It is also before the Court

on Bender Shipbuilding & Repair Co., Inc.'s motion to dismiss Seacor Marine LLC's cross-claim

1

against it. This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is granting in part and denying in part Seacor's Motion to Dismiss and is denying Bender's Motion to Dismiss.

FACTS

The pleadings show that Bender agreed to build six anchor towing supply vessels for Seacor for a total price of $154 million. The parties entered into a contract that stated the terms of the agreement on October 21, 2005, but the contract was amended on September 27, 2007. The amended contract (Contract) increased by $13.8 million the price to be paid to Bender for construction of the vessels. Five of the six vessels were built and delivered. The sixth, the M/V SEACOR SHERMAN (Vessel) was to be built for a contract price of $26,579,773, including the price increase and change orders. The Vessel was damaged in a fire on the Vessel on May 14, 2008. The parties dispute the extent of the damage. Seacor asserts that the Vessel is a total loss. Bender asserts that the Vessel can be repaired.

Bender procured insurance (Insurance Policy or Policy) on the Vvessel from the named plaintiffs in this interpleader suit that named Bender as assured. However, proceeds of the Policy could be paid to Seacor as owner of the Vessel under some circumstances. The Policy provides at least $20 million in coverage for the loss. Bender asserts that the Policy has an escalation clause that allows coverage to be added to the initial $20 million amount as the contract price of each vessel rises.

Bender did not insure the parts and equipment supplied by Seacor (Buyer-Furnished

2

Equipment) that was put on the vessel and these parts and equipment are not part of the $26,579,773 cost stated in the amended Contract (with change orders). The parts and equipment are not included in the "Agreed Value" provisions of the Insurance Policy.

Seacor and the Insurers have agreed that the Vessel is a total loss and the Insurers are prepared to pay $20 million to Seacor. Bender objects and asserts that the Vessel is only a partial loss and Bender is entitled to the insurance proceeds to repair the Vessel and complete the Contract. Bender prepared an estimate of the reasonable cost of repair that showed the cost of repair was less than the value of the Vessel at that state of completion. The Insurer/Plaintiffs have agreed to pay Bender $389,694.40 for its sue and labor expenditures.

Seacor has a separate excess insurance policy that covers loss to Buyer-Furnished Equipment supplied for the Vessel and did not obtain a waiver of subrogation from Bender. Bender did not know about the policy. Bender alleges Seacor surreptitiously obtained the policy. Bender asserts that Seacor knew Bender had a $20 million policy insuring the Vessel and acquiesced in the amount of coverage by paying monthly premiums reflecting the value and by not informing Bender of the value of Buyer-Furnished Equipment or asking Bender to report the value.

Bender would have been owed $3,682,149 in further payments after completion of sea trials and redelivery. At the time of the fire, after deduction of amounts saved from not doing sea trials or redelivery, Bender would be owed approximately $3.1 million.

Seacor sued Bender for breach of contract in the U.S. District Court for the Northern District of Alabama. That action was stayed when Bender was placed in an involuntary chapter 7 bankruptcy in this Court on June 9, 2009. Bender consented to the petition and converted the

3

case to one under chapter 11 on June 29, 2009.

Seacor asserts it paid Bender over $23 million for the Seacor Sherman and bought about $5.4 million of Buyer-Furnished Equipment to be installed on the Vessel as well. Seacor held registered title to the Vessel at the time of the loss.

As of May 14, 2008, the Vessel had been launched and was substantially complete with some additional work and sea trials to be completed. As of May 14, 2008, the Vessel had not been "redelivered" to Seacor pursuant to the Contract.

Seacor asserts that the Insurance Policy requires Bender to insure the Vessel for at least $32,221, 995. Seacor asserts that Bender is in default under its Contract with Seacor.

Seacor asserts that Bender has no standing to challenge the Insurers' determination that the Vessel is a constructive total loss because the owner of the Vessel--Seacor--agrees with the Insurers that it is a constructive total loss. Seacor further asserts that, even if the Vessel is a partial loss, since Bender is in default under the Contract, Seacor still owns the insurance proceeds.

LAW

Seacor and Bender both brought motions to dismiss claims. Seacor seeks to dismiss Bender's cross-claims against it pursuant to Fed. R. Bankr. P. 7012(b)(6) and Bender seeks to dismiss Seacor's claims under Fed. R. Bankr. P. 7012(c). Each bears the burden of proving its case. The only facts that the Court can rely upon is what is stated in the pleadings

The standard for a Fed. R. Bankr. P.7012(b)(6) motion is that the Court "accepts the non-moving party's allegations as true; however, the court is not required to accept a plaintiff's legal conclusions." *Mack v. Wilcox County Com'n*, 2009 WL 4884310 (S.D. Ala. 2009)(citing

*Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009). The Court also is to "make reasonable inferences in the plaintiff's favor," but does not have to do so. *Id*. at *2. The contract is governed by New York law.

Seacor Motion to Dismiss

A.

Count I of Bender's cross-claim asks the Court to declare that the insurance policy obtained by Bender provides

> coverage for the entire construction price of Vessel 4 by operation of the "Escalation" clause, which adjusts the Agreed Value and the Amount Insured for any increases in price due to increase in the cost of labor or material as well as any increase in cost due to changes in the specifications or design of the Vessel.

Count One, ¶ 27(a).

Seacor asserts that the count must be dismissed because the declaration would be at odds with the definition of "Contract Price" in the Contract.

> The Escalation Clause of the Insurance Policy states that
>
> in the event of any increase or decrease in the cost of labor or materials, or in the event of change in the specifications or design of the Vessel (not constituting a material change for purposes of the held covered provisions of the Subject Matter clause), the Agreed Value shall be adjusted accordingly, but any increase shall be limited to <u>N/A</u> per cent of the Agreed Value as provisionally declared, and the Amount Insured shall be adjusted proportionately, provided that the Assured shall pay premiums at the full Policy rate on the total construction cost of the Vessel of this insurance, but the Underwriters shall in no event be liable under this Policy for more than the Agreed Value provisionally declared plus said percentage thereof.

The Court has reviewed the Insurance Policy and Contract language in question. The Court concludes that, at this stage of the case, Bender's reading of the Policy to include additions to the vessel within the Agreed Value, even if premiums were not paid prior to the loss is not an

5

unreasonable reading of the Policy. The Court cannot find as a matter of law that the Policy reads as Seacor asserts. The Policy clearly allowed increases in the Agreed Value due to increases in cost or changes in design. The amount of the increases was not capped. There is no requirement in the Policy that payment for the changed Agreed Value be made prior to a loss. The motion to dismiss must be denied.

B.

Bender's Count One in its cross-claim asks that the Court declare that "no amount was stated in the Policy for the materials and equipment furnished by Seacor and thus those materials and equipment were not deemed a part of the Vessel insured under the Policy." Seacor asserts that Bender breached the Contract with it by failing to insure the equipment Seacor furnished to Bender to install on the Vessel. Therefore, Seacor seeks dismissal of this claim.

Article 33 of the Contract between Bender and Seacor states at ¶ 33 (b) that "Builder shall at its own expense . . .insure under the builder's risk policy required by Article 19 of this Contract the Buyer-Furnished Equipment." The Insurance Policy states

> The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at the completed contract price plus the value of materials and equipment destined for the Vessel but not included in such price. If no amount is stated for such materials and equipment, Underwriters shall have no liability for any loss, damage or expense thereto, or in connection there with, and such materials and equipment shall not be deemed a part of the Vessel.

Bender, in its brief, states that Seacor misconstrues what it seeks by the declaration. It does not seek to deny Seacor its breach of contract claim; rather, it seeks to have the Court declare that the Buyer-Furnished Equipment was not covered under the Agreed Value provision of the Policy because no amount was stated for such materials and equipment. The Court concludes, based

6

Case 09-01077   Doc 78   Filed 12/28/09   Entered 12/28/09 12:24:25   Desc Main
Document      Page 6 of 17

upon the language of the Policy, and drawing all reasonable inferences in favor of Bender, that the motion to dismiss must be denied. Bender has a plausible argument based upon the Policy language.

C.

In Count One of the Bender cross-claim against Seacor, Bender seeks a declaration that "the Vessel was not underinsured." Count One, ¶ 27 (c). Seacor seeks dismissal of this claim.

The Contract between Bender and Seacor states at ¶ 19 (a) that

> Builder shall keep and maintain in effect . . .Builder's Risk Insurance on all the Vessels and all machinery, materials and equipment in the Builder's possession, or built into or installed upon such Vessels, including Buyer-furnished equipment, if any, in the amount of the Contract Price plus the value of any Buyer-furnished equipment

Bender's answer to the complaint and its cross complaint admit that the only policy of insurance Bender purchased was the policy at issue in this interpleader action. Bender admits that the Contract Price for the Seacor Sherman was $26.8 million. Bender also admits that Seacor supplied equipment that was installed on the Vessel.

If Bender did not fulfill the requirements of the contract requirement to insure the Vessel, including the Buyer-Furnished Equipment, then, Seacor argues that Bender is in default under the Contract, triggering other rights for Seacor. Bender states that it has defenses to the default assertion by Seacor. However, whether there are or are not other issues about the alleged default under the Contract or defenses to the allegation, the Court concludes that, solely as to the statement that Bender did not underinsure the Vessel, the statement is not correct and that can be determined based solely upon the pleadings and the attached contracts. The fact that the Vessel was underinsured according to the terms of the Contract between Bender and Seacor does not

7

mean that the Court is concluding that Bender is in default under the Contract. Seacor's motion to dismiss is due to be granted.

D.

Bender seeks a declaration that the Vessel is not a "constructive total loss as defined under the Policy." Count One, ¶ 27 (d). Seacor seeks a dismissal of the claim because it is the owner of the Seacor Sherman and Seacor, as owner, has agreed with the Insurers that the Vessel is a total loss. Also, Seacor asserts that Bender is in default on the Contract and, therefore, Seacor can terminate the Contract and receive the proceeds. Lastly, even if the loss is only a partial loss, Bender has only claimed $3.1 million in amounts owed under the Contract. Since Seacor owns the bulk of the proceeds due to its "respective interest" in the Contract, it should receive all of the $20 million since that is less than its full share of the loss in any event. Contract at ¶ 19(b)(I).

Bender asserts that, even if it is not owner of the Vessel according to the Contract, it does bear the risk of loss under the Contract. Bender asserts that it continues to bear the risk of loss of the Vessel until it is accepted by Seacor upon redelivery. Bender asserts that redelivery had not occurred because the Vessel was in Bender's possession at the time of the fire. Thus, Bender bears the risk of loss. Bender is also the insured party under the Insurance Policy. If the insurance proceeds do not fully compensate Seacor for its losses on the Vessel, Seacor will sue Bender for any losses due to an indemnity and hold harmless clause in their Contract. Seacor's cross-claim against Bender does assert a claim against Bender for the losses. Count Two of Seacor cross-claim. If, as Bender claims, the loss is only a partial loss, Bender would be entitled to the proceeds to repair the Vessel and mitigate or wipe out Seacor's losses.

8

All Bender has to do to defeat the dismissal request is plead sufficient facts to raise an issue in regard to the loss. The Court concludes that Bender has done so. Bender is an insured party under the Contract. The loss is not clearly total or partial based upon the facts known to date, but, taking the facts in the light most favorable to Bender, there are sufficient facts to support the claim at this stage. Bender's cross complaint states it prepared an estimate of repair that is less than the value of the Vessel at the stage of completion the Vessel was in at the time of the fire.

E.

Bender seeks a declaration at ¶ 27(e) that it is entitled to the insurance proceeds "for the cost of restoring the Vessel to its stage of construction prior to the loss." Seacor asserts that the claim must be dismissed because the Vessel is a total loss and therefore Seacor is entitled to the proceeds. Even if there is not a constructive total loss, Seacor is entitled to the proceeds because Bender is in default under the parties' Contract. Third, even if the Vessel is only a partial loss, and there is no default, the Contract provides that all losses must be paid to the parties "in accordance with their respective interests." Contract ¶ 19(a)(I). Finally, Seacor argues that the proceeds belong to Seacor because Seacor can terminate the Contract after a force majeure when work is not resumed within 180 days.

The Court cannot determine at this stage of the case that the Vessel is a constructive total loss based upon Bender's complaint. Therefore, the first grounds for Seacor's dismissal request is denied. The Court cannot conclude at the pleading stage that Bender is in default under the parties' Contract. No allegation of any notice being given to Bender is stated in its cross claim. The second grounds for dismissal must be denied. The third ground must be denied because the

9

facts are not clear on the issue of how to deal with proceeds in the event of a partial loss. The Contract at ¶ 19(a)(I) does state that all losses under the Insurance Policy shall be paid "in accordance with their (the parties') respective interests." However the paragraph also states that, in the event of a partial loss, "all amounts recovered under Builder's Risk Policy shall be paid to Builder" provided that Bender is not in default under the Contract. As stated, the Court cannot find that there has been a default at this stage of the case. Finally, Seacor argues that there has been a force majeure that allows Seacor to terminate the Contract. Contract ¶ 13(a). However, the clause requires a notice to effect a termination and the pleadings include no allegation of notice.

F.

Bender seeks a declaration that

> Seacor waived any contention, and is estopped form contending, that Bender breached its obligations under the Amended Contract by allegedly failing to keep Vessel 4 fully insured because of its continuing acquiescence in the coverage provided for Vessel 4, its payment of invoices for premiums based upon the coverage recited, its failure to report the values of equipment supplied to the Vessel, and its decision to purchase its own excess policy in lieu of reporting additional values under the Policy purchased by Bender.

Count One of Cross Claim, ¶ 27(f).

Seacor asserts that ratification is a defense to a claim, not an affirmative claim. For that reason, it cannot be a grounds for declaratory relief. Second, the Contract has a provision that states that

> [t]he failure of either party to insist on strict performance of any provision of this Contract shall not be construed as a waiver of any provision in any later circumstance, and such failure shall not affect the right to thereafter exercise nay right or remedy under such provision or any other provision of this Contract or at law.

Contract ¶ 25.

10

Third, there is no showing of "'a clear manifestation of intent' to relinquish a contractual protection." *Fundamental Portfolio Advisors, Inc. V. Tocqueville Asset Mgmt. L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006) (citation omitted). Fourth, Bender cannot be relieved from its own failure to procure insurance due to the fact that Seacor obtained its own insurance. Finally, the Contract clearly required Bender to insure the Seacor furnished equipment and Bender cannot write the provision out of the Contract. Contract ¶ 33.

Bender states that its request for declaratory relief asserting waiver or estoppel is more than a defense because its claims that it is not in breach of the Contract and entitled to have the Vessel declared a partial loss affirmatively depend upon the issue. The Court concludes that the waiver/estoppel issue is integral to Bender's case and will not dismiss it as merely a defense at this time. *U.S. Life Ins. Co. of America v. Herring*, 2008 WL 4925636, *6 (M.D. Ala. 2008); 6 Wright & Miller, FED. PRACTICE AND PROC.: CIVIL 2D 1406 (3rd Ed.). The second ground--that the Contract has a waiver provision that controls--is not sufficient to dismiss the claim at this point. Parties can waive such clauses. *ANZ Advanced Technologies, LLC v. Bush Hog, LLC*; *Kenyon & Kenyon v. Logan, LLC*, 33 A.D.3d 538, 832 N.Y.S. 2d 72 (N.Y.A.D. 1 Dept. 2006). 2009 WL 3415650, *4 (S.D. Ala. 2009) (stating that "nonwaiver clauses and clauses that require modifications to be in writing can be found to be waived upon proper proof"(citing Alabama cases)). Third, Bender has alleged enough facts to prevent dismissal of the claim on the grounds that no intentional waiver is alleged due to the facts set forth in the Cross Claim ¶ 27(f). Fourth, the facts, viewed in a light most favorable to Bender, establish that Seacor may have waived or be estopped from enforcing fully Contract ¶ 33.

G.

11

Bender seeks a declaration that if it redelivers the Vessel, it is entitled to a payment of $3,582,149. Seacor asserts that this request is due to be dismissed because it has not redelivered the Vessel. The Court concludes that Bender has shown sufficient allegations to survive dismissal on the pleadings of claims that the Vessel was not a total loss, and with the insurance proceeds paid to it, Bender could deliver the Vessel. This dismissal request has to be denied because of the denial of dismissal of the predicate declarations.

## H.

Bender asks the Court to declare that it

> is entitled to recover its reasonable sue and labor costs under the Policy issued to Bender, as well as the costs incurred in perfecting and preserving the Underwriters' subrogation claims against those responsible for the fire . . . without deduction or offset of any amounts allegedly due and owing to Seacor for unreimbursed advances.

Count One, Cross-Claim of Bender, ¶ 27(h).

Seacor states that the Contract states Bender is responsible for protecting the Vessel from further loss, not Seacor. Contract ¶ 17. Seacor does not object to Bender's recovery of the costs from the Underwriters to the extent available. The Court concludes that the Insurance Policy allows Bender to obtain sue and labor costs if properly owing and documented. This dismissal request fails.

## I.

Bender seeks a declaration that, to determine a constructive total loss under the Insurance Policy, the amount for which the Seacor Sherman is insured "is the total value of the Vessel at the time of the loss as determined by the total cost of labor and materials expended and incorporated in the Vessel at the time of loss, including accrued overhead and profit on such labor and

12

materials." Seacor states that the declaration request should be dismissed because the policy controls.

> The Insurance Policy states that a total loss is
>
> the expense of restoring the Vessel to the stage of construction at the time of loss would exceed her value at such stage of construction (which value shall be taken to be the cost of labor actually expended by the Builder in the construction of the Vessel and material actually incorporated therein a the time of loss, including accrued overhead and profit on such labor and material, not exceeding the Agreed Value).
>
> Insurance Policy, Part I, page 2, lines 84-89, "Total Loss".

Bender asserts that Seacor does not dispute that Bender would be entitled to relief as stated in the Insurance Policy so the claim should not be denied. If Bender is stating that it is relying on the Contract language for a determination of constructive total loss, there is no need for the declaration and the claim can be dismissed. The Court will hold Seacor to its stipulation that it does not dispute Bender's entitlement to relief as stated under the Contract. The motion to dismiss must be granted.

J.

Bender seeks a declaration that it is entitled to recovery from Seacor of $3.1 million for "unpaid work and labor" if the Seacor Sherman is declared a constructive total loss. Answer and Cross-Claim, ¶ 27(j). Bender seeks this determination under ¶ 19(d)(iii) wherein insurance proceeds are to be paid to the parties "in accordance with their respective interests." Bender alleges that $3.1 million has not been paid to it on the Contract Price and therefore, its interest in the insurance proceeds is that amount.

Seacor asserts that the $3.1 million is not due because, under the Contract, it is not due until redelivery of the Vessel and that has not occurred. If the Vessel is a constructive total loss it

13

will never occur. Bender has alleged that the $3.1 million of work has been done and materials expended. Bender, pursuant to ¶ 16(b) of the Contract, has a lien "against such Vessel and the Contract Work . . . and any goods or components . . . pursuant to Section 35-11-60, Code of Alabama, as security to Builder for . . . payments then due with respect to any Vessel pursuant to Article 4." The Court concludes that the existence of the lien is sufficient to allow this claim to stand.

K.

Seacor asserts that Bender's claim for breach of contract should be dismissed on Fed. R. Bankr. P. 7012(b)(6). However, Count Two of Bender's cross-claim is not due to be dismissed. Seacor reiterates the arguments made in its request for dismissal of the declaratory judgment requests. The Court incorporates all of the reasons the earlier dismissal requests were denied as to this request as well.

L.

Seacor asserts that Bender's Count Three should be dismissed. The Count sets forth a claim for recovery of the value of work and labor performed on the Vessel. That value is $3.1 million. Seacor states that, since there is a contract between the parties, it must govern, and Bender cannot recover on a quasi contractual basis. Bender agrees that it cannot recover under both theories. It states it is merely pleading alternative causes of action.

Courts have allowed the pleading of alternative and inconsistent causes of action in cases. "Rule 8(e) permits a plaintiff to make two or more "statements of a claim" alternatively. . . [Plaintiffs may state as many separate claims as they have regardless of consistency." *In re Livent, Inc. Noteholders Securities Litigation,* 151 F. Supp.2d 371, 406 (S.D.N.Y. 2001): *John J.*

14

*Kirlin, Inc. v. Conopoc, Inc.*, 1995 WL 15468, *2 (S.D.N.Y. 1995) (stating that "consistency in pleading is not required by the federal rules, and a party may claim alternatively on an express contract and on an implied contract" quoting 5 Wright & Miller, FED. PRACTICE AND PROC.:CIVIL 2D, §1235 at 274 (1990 and Supp.1994)). Bender alleges that it has expended $3.1 million for work and materials for which it has not been paid. It is not improper to seek relief inconsistent with its contractual claims in the event the contractual claims fail. Bender has plead enough to avoid dismissal of the claim.

M.

Seacor asserts that Bender's Count Four for tortious interference with a contract or business relationship should be dismissed. The grounds are that Seacor is a party to the Insurance Policy with Bender and the Underwriters and a party to a contract cannot be sued for such a claim. Tortious interference requires a third party or stranger to the contract. *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006); *see also McFarlin v. Conseco Servs, LLC*, 318 F.3d 1251, 1261 (11th Cir. 2004); *Spang v. Katonah-Lweisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 400 (S.D.N.Y. 2009).

Bender asserts that it is suing Seacor in this cause of action for interference with its right to receive sue and labor benefits under the Insurance Policy, not as to the portion of the policy dealing with the rights of the parties to the total or partial loss proceeds. Bender asserts that Seacor is a third party or stranger to this part of the Insurance Policy if it behaved in certain ways. *Waddell & Reed, Inc. V. United Investors Life Insurance Co.*, 875 So.2d 1143, 1155 (Ala. 2003). Bender has alleged enough facts in its complaint to make this claim possible. Seacor is not an essential entity to the determination of sue and labor costs under the Insurance Policy.

15

The Court concludes that as to the sue and labor costs portion of the Insurance Policy Seacor is a "third party" and may be liable for damages. The cross claim allegations are sufficient to overcome a motion to dismiss.

N.

Seacor seeks to dismiss Count Five of the Bender's cross claim. The cross claim seeks a declaration that Seacor did not act in good faith in its dealings with Bender when it purchased its own excess insurance on the Vessel instead of obtaining the insurance through the Insurance Policy. Again, Seacor asserts that the parties' relationship is governed by the Contract. Bender asserts that it did not know about the insurance; it does not cover losses of Bender; and Bender was harmed by the inability to have further coverage for the potential losses suffered.

A lack of good faith and fair dealing claim does not depend on the contract terms themselves. Therefore, whether there is a contract term that requires the coverage or not by Seacor is not relevant. Bender has alleged enough facts to allow the claim to go forward at this point.

Bender Motion to Dismiss

Bender seeks to have Count IV of Seacor's cross claim against it dismissed pursuant to Fed. R. Bankr. P. 7012(b)(6) for failure to state a claim upon which relief can be granted. Seacor seeks to set off any amount Bender receives from the Insurance Policy for sue and labor costs against an alleged amount owed to Seacor of $1.4 million. Seacor asserts that the $1.4 million was advanced to Bender before redelivery of the Seacor Sherman and the sum was to be credited against the final delivery payment. The Vessel has not been redelivered to date.

Bender argues that the sums it is paid for sue and labor costs by the Underwriters is not

16

paid from the $20 million or more amount to be paid to Seacor or Bender under the Insurance Policy required under the parties' Contract. The sue and labor costs are paid from separate and complementary coverage that does not reduce the $20 million policy amount payable for loss or damage to any vessel itself. The Insurance Policy provides on page 3 at lines 95-108 for such expenses. It does not appear that the expenses are paid from the part of the policy that pays benefits for loss or damage to a vessel.

Case law cited in Bender's brief indicates that sue and labor cost provisions are separate insurance and supplement the loss and damage coverage. *Home Insurance Co. v. Ciconett*, 179 F.2d 892 (6th Cir. 1950); *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 488 n. 11 (5th Cir. 1960).

Seacor makes clear in its brief that it only would have a right of setoff if the sue and recover costs were deducted from the $20 million of coverage it claims the Policy provides for loss or damage of the Vessel. The Court agrees that there would be a right to setoff if that were the case. There would be a mutual debt.

The Court concludes that Count IV states a ground for relief to the extent that the proceeds are the source of sue and labor costs. Because the Court does not have the admission of the Underwriters at this point as to their position on this issue, the Court will allow the Count to stand.

THEREFORE IT IS ORDERED that the Motion of Seacor to dismiss is GRANTED in part and DENIED in part and the Motion of Bender to dismiss is DENIED.

Dated: December 28, 2009

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE